IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY T.D. MARTIN, N51433, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-569-DWD |
| | ) |
| J. FURLOW, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Timothy Martin, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center (Menard), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard on March 23, 2021. Plaintiff's sole claim is that Defendant Furlow utilized excessive force against him when he came to his cell to get him for a call pass. Defendant filed a Motion for Summary Judgment (Doc. 43) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Plaintiff did not file a response, though he filed two letters with the Court in recent months. (Docs. 47, 48).

## BACKGROUND

Plaintiff signed his complaint on April 4, 2021, it was received by the United States District Court for the Northern District of Illinois on April 14, 2021, and on June 10, 2021, it was transferred to this District. Upon initial review, the Court identified only one claim to proceed:

Count 1: Eighth Amendment excessive force claim against Furlow.

(Doc. 14).  Other claims and parties were dismissed for failure to state a claim.  (*Id.*)

## FINDINGS OF FACT

### *The Complaint*

In the Complaint, Plaintiff alleges that on March 23, 2021, he was told to get dressed in his state blues because he had a call pass that he did not know about.  (Doc. 1 at 3)  Once he was ready, he alleges that Defendant Furlow and a fellow officer attacked him in the E-C-H foyer.  (*Id.*).  After being beaten, he was taken to an interview with Internal Affairs Officer Childs.  Plaintiff seeks compensatory and punitive damages.  In support of his complaint, Plaintiff submitted a grievance form that he indicated was a "copy of his exhaustion of administrative remedies."  (Doc. 1 at 12-13).  The grievance is extremely difficult to read because the page is crowded, and the handwriting is not always clear.  From what the Court can discern, Plaintiff alleges that the grievance was prepared on March 23, 2023, and it was allegedly received on April 5, 2021[1].  In the counselor's response portion of the grievance, Plaintiff wrote that there was no need for a counselor or warden's signature because it was a copy for the Court.  He further explained that he has not yet gotten a memo telling him his grievance number or status, but he alleges he never gets a response within 60 or even 90 days.  He stated that once he got a response from the grievance office, he would send it to the Court.

---

[1] The source of the "received" date is not clear.  There are no official markings on the document indicating receipt by the prison, and Plaintiff indicated in his note in the counselor section that he never got a memo or status update on the grievance.

*Defendant's Motion for Summary Judgment*

In the motion for summary judgment, Defendant Furlow argues that Plaintiff never filed an emergency grievance on March 23, 2021. Grievance logs show that he filed an emergency grievance that mentioned Furlow on April 21, 2021, which was denied and returned to him on April 22, 2021. There is no record that he ever re-filed the grievance via the standard procedure, or that he appealed it to the ARB. Thus, Defendant argues that Plaintiff completely failed to exhaust administrative remedies as to any excessive force claim regarding contact on March 23, 2021. In support of the motion, Defendant included copies of Plaintiff's grievances, his cumulative counseling summary, and a declaration from a grievance office employee at Menard.

The cumulative counseling summary shows that on March 23, 2021, two grievances were reviewed and answered by the healthcare unit. On March 25, 2021, Plaintiff asked about a grievance and tried to pass one to his counselor, but she informed him that he needed to place it in the grievance box passed around during the 3-11 shift. (Doc. 44-3 at 3). On April 1, 2021, Plaintiff asked the counselor for her signature on a grievance that was returned by the ARB. The counselor looked at the grievance and saw that it had "no date stamp[] or grievance number." The counselor returned the grievance to Plaintiff and again told him to place it in the box during the 3-11 shift. On April 21, 2022, the grievance office received a grievance marked an emergency concerning personal property and staff conduct. The grievance was deemed a non-emergency and it was returned to Plaintiff the next day. No other grievances were recorded until July 30, 2021, when Plaintiff submitted a grievance about a bloody nose. (Doc. 44-3 at 2).

Grievance Office employee Kelly Pierce reviewed Plaintiff's grievance records upon request by the Illinois Attorney General's Office. She stated that a party must file a grievance within 60 days of an incident. Plaintiff's only recorded grievance within 60 days of March 23, 2021, was his April 21, 2021, emergency grievance. There is not a copy of the grievance because grievances deemed non-emergency are returned to the offender so that they can re-file the grievance via standard procedures. Plaintiff did not resubmit the grievance.

Plaintiff received notice that if he failed to respond to the Motion, the factual allegations could be treated as undisputed, and summary judgment may be granted on those factual assertions. (Doc. 45).

## CONCLUSIONS OF LAW

### A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of

material fact, and the determination is purely legal. *See e.g., Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). To properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). An inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE

§ 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.* If a grievance concerns protective custody, a plaintiff is allowed to file that grievance directly with the ARB. 20 ILL. ADMIN. CODE § 504.870(a)(1).

### B. Analysis

Defendant contends that Plaintiff has failed to exhaust his administrative remedies because the only grievance that he filed about the excessive force claim in this lawsuit was filed a week after the lawsuit was initiated, and it was never properly exhausted. Plaintiff did not file a response, so he does not directly contest this argument. Although Plaintiff submitted two letters after the Defendant's Motion was filed, the contents of the letters are not clearly relevant to this Motion. The first letter discusses random facts related to the day of the alleged excessive force incident, and then it discusses Plaintiff's

finances. (Doc. 47). The second letter exclusively discusses Plaintiff's finances.[2] Given the lack of a response from Plaintiff, the Court considered Plaintiff's originally pleadings and the Defendant's motion and evidence.

The evidence clearly supports Defendant's position that Plaintiff did not properly exhaust administrative remedies. Even if Plaintiff filed an emergency grievance on March 23, which he alleges was received on April 5, 2021, he signed and dated his lawsuit April 4, 2021. A "'sue first, exhaust later' approach is not acceptable." *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020). Whether Plaintiff filed an emergency grievance on March 23, 2021, or whether he waited to file the emergency grievance until April 21, 2021, as his cumulative counseling summary indicates, neither timeframe would be sufficient to accomplish exhaustion before he mailed this lawsuit on April 4, 2021. Additionally, there is no evidence that Plaintiff properly exhausted either of these alleged grievances.

---

[2] Plaintiff is concerned that funds have been improperly deducted from his prison account. A search of Court records shows that Plaintiff has litigated at least three civil cases before the Court, in addition to the current case—those cases are: 10-cv-1035-PMF; 11-cv-942-JPG; and, 11-cv-943-JPG. He also had one appellate case—14-1632—before the Seventh Circuit. As was explained in this case when IFP status was granted, Plaintiff shall make monthly payments of 20% of the preceding month's income (all deposits to his account), until the $350 has been received in full. (Docket entry 26). If a prisoner has more than one case for which he is making payments, the payments accumulate—meaning that he would pay 20% for the first case, 20% for the second, and 20% for the third, for a total of 60% of that month's deposits. This is true all the way up to 100% of deposits Plaintiff receives in a month. In Plaintiff's specific situation, it appears that he has four or five cases with fees owing, which means that he could be required to pay up to 100% of all deposits he receives each month. A review of the Court's own financial records suggests that payments continue to be made in accordance with this schedule for all four of Plaintiff's civil cases in this District. Payments do not end because a case is dismissed. The fee attaches when the case is filed, and the whole fee must be paid regardless of the outcome of the case.

The record simply does not support a finding that Plaintiff exhausted his administrative remedies, so his case must be dismissed.

### DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion filed by Defendant Furlow (Doc. 43) is **GRANTED**. Plaintiff's claim against Defendant Furlow is **DISMISSED** without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment in defendants favor at the close of this case.

**IT IS SO ORDERED.**

Dated: July 18, 2022

_____
DAVID W. DUGAN
United States District Judge